331 F.Supp. 797 (1971)
Glen J. TRAVIS, on behalf of himself and as representative of a class of persons similarly situated, et al., Plaintiffs,
v.
ANTHES IMPERIAL LIMITED, a (Canadian) corporation, et al., Defendants.
No. 69 C 367 (4).
United States District Court, E. D. Missouri, E. D.
June 24, 1971.
*798 John J. Cole, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiffs.
*799 Coburn, Croft, Shepherd & Herzog, St. Louis, Mo., for Anthes Imperial Limited and Molson Industries Limited.
Deacy & Deacy, Kansas City, Mo., for the Individual Moving Defendants and Dominion Securities Corp., Limited; Shearman & Sterling, New York City, of counsel.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court on motions of the various defendants directed to the plaintiff's first amended complaint. The motions pending include the following: motions to dismiss for failure to state a claim upon which relief can be granted; motions to dismiss for lack of jurisdiction over the subject matter and for lack of jurisdiction over the persons of the defendants; motions to dismiss for improper venue; and motions to quash service. The parties were heard on oral argument and have submitted numerous and voluminous briefs and affidavits in support of and in opposition to the motions.
Also pending are plaintiffs' motion for an order that this action may proceed as a class action under Rule 23, Federal Rules of Civil Procedure, and a motion to compel discovery under Rule 37, Federal Rules of Civil Procedure.
Plaintiffs are Glen J. Travis, Claire N. Travis, and St. Louis Union Trust Company, a corporation, Josephine Travis and Glennon J. Travis, suing on behalf of themselves and as representatives of a class of persons similarly situated. Plaintiffs are citizens of St. Louis County, Missouri, and St. Louis Union Trust Company is a Missouri corporation with its principal place of business in Missouri. From August 1966 to July 1969, plaintiffs were the owners of record of 153,375 Class A common shares of Anthes Imperial, Limited. Plaintiffs seek to represent the class consisting of all United States shareholders who owned Class A or Class B common shares of Anthes Imperial, Limited, as of May 25, 1968.
Defendants are Anthes Imperial, Limited (hereinafter referred to as "Anthes"), a Canadian corporation with its head office in Toronto, Ontario; Molson Industries Limited (hereinafter referred to as "Molson"), a Canadian corporation; eleven individuals who were at all relevant times the controlling shareholders, officers and directors of Anthes, nine of whom are residents of Canada, one of whom is a resident of New York and one of whom is a resident of New Jersey; twelve individuals who were at all relevant times the controlling shareholders, officers and directors of Molson, all of whom reside in Canada; and Dominion Securities Corporation Limited (hereinafter referred to as "Dominion"), a Canadian corporation.
The first amended complaint asserts jurisdiction under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; and under 28 U.S.C. § 1332(a) (1) and (2); that is, diversity of citizenship and amount in controversy; and as for Count Two, principles of pendent jurisdiction.
The facts pertaining to jurisdiction will be outlined in discussion where applicable. However, briefly summarized, the facts giving rise to plaintiffs' claims are few. Count One, charges that the defendants conspired to defraud all United States shareholders of Anthes for the purpose of eliminating United States resident shareholders of Anthes, in violation of Rule 10b-5 of the Securities Exchange Act. The alleged acts in furtherance of the conspiracy appear to be that in 1968, Molson made a tender offer to acquire the share of non-United States shareholders of Anthes. Defendants represented to the plaintiffs that they should not attempt to exchange their shares because after the expiration of the tender offer, defendants would treat United States resident shareholders of Anthes on an equivalent basis, net after-taxes, as they treated non-United States resident shareholders of Anthes. Plaintiffs claim that they were thereby induced to refrain from selling their shares.
*800 Plaintiffs allege that in June 1969, defendants advised them that they would not attempt to effectuate a tax-free exchange for them. Defendants allegedly then offered to purchase plaintiffs' Anthes shares for 1.7 Class A common of Molson plus $3 cash (Canadian) for each share of Anthes held by plaintiffs or an equivalent amount in cash at the then current price of Molson Class A common shares at $22 (Canadian) per share. On July 9, 1969, plaintiffs transferred their Anthes shares to Molson for $40.40 (Canadian) per share as a result of an alleged threat by Molson to refuse to make any subsequent purchase of plaintiffs' stock. Plaintiffs allege that the cash amount they received for their shares in July 1969 was substantially less than the value of the Molson shares they would have received in 1968 if the original tender offer would have been extended to them. Plaintiffs allege that the misrepresentations were made to them by the mails and long distance telephone calls. Plaintiffs seek damages for themselves in the amount of $1,050,619 (Canadian), and damages for the class.
Count Two incorporates substantially all of the allegations of Count One. Jurisdiction is alleged to be based on diversity of citizenship and amount in controversy and also pendent jurisdiction. The second count charges that the acts of the defendants alleged in Count One constituted a fraud and deceit upon the plaintiffs in violation of a fiduciary duty owed plaintiffs by defendants. Plaintiffs seek actual damages in excess of one million dollars and punitive damages against defendant Willmot.
The initial question is whether a tender offer by one Canadian corporation for the shares of another Canadian corporation, not extended to United States resident shareholders is within the subject matter jurisdiction of this Court.
Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
* * * * * *
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
Rule 10b-5 (17 CFR 240.10b-5), promulgated by the SEC pursuant to § 10 (b), provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security."
Section 30(b) of the 1934 Act provides (15 U.S.C.A. § 78dd):
"The provisions of this chapter or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules *801 and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this chapter."
With respect to the character of the tender offer by Molson to non-United States resident shareholders, the following facts are relevant. Neither Molson shares nor Anthes shares were at any relevant time registered with the United States Securities and Exchange Commission, and to have extended the tender offer to United States resident shareholders would have required Molson to register its shares with the SEC. Molson management decided that it could not afford the delay required to register the shares before making and implementing its tender offer. In other words, at the time the tender offer was made, to have extended it to United States resident shareholders would have been a violation of the federal securities laws.
Further, the tender offer included a combination of cash and Molson shares in exchange for Anthes shares, which Molson states was desirable in order to minimize the dilution of its per-share earnings. Thus, the tender offer would have had adverse capital gains tax consequences on United States resident Anthes shareholders if made to and accepted by them; consequences not applicable to non-United States resident shareholders. In fact, plaintiffs claim that they were entitled to additional compensation for their Anthes shares in order that they would be on an equivalent net-after-taxes basis with non-United States resident shareholders of Anthes.
While plaintiffs allege that the misrepresentations of defendants involved the use of the telephone and the mails, the facts remain that the transactions complained of involved two Canadian corporations, Canadian residents (except two individual defendants) and a tender offer made solely in Canada respecting shares not registered on any American securities exchange.
The exclusionary language of § 30(b) of the 1934 Act, 15 U.S.C. § 78dd, has been limited in its application so as to exempt from the 1934 Act only brokers, dealers and banks insofar as they transact business in securities without the jurisdiction of the United States. Schoenbaum v. Firstbrook, 405 F.2d 200 (2d Cir. 1968), affirmed in part, reversed in part on other grounds, 405 F. 2d 215 (En Banc), cert. denied, Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). Nevertheless, Schoenbaum, as the highest and most recent court decision dealing with the extraterritorial application of Rule 10b-5, compels the conclusion that this Court does not have subject matter jurisdiction. There the Court of Appeals for the Second Circuit reversed the district court's dismissal of a complaint charging use of confidential information in connection with insider trading in the shares of a Canadian corporation listed on the American Stock Exchange in New York City. In upholding the complaint, the court clearly set forth the limited situations in which the securities acts have extraterritorial application. The court held (405 F.2d at 206):
"We disagree with the district court's conclusion. We believe that Congress intended the Exchange Act to have extra-territorial application in order to protect domestic investors who have purchased foreign securities on American exchanges and to protect the domestic securities market from the effects of improper foreign transactions in American securities. In our view, neither the usual presumption against extraterritorial application of legislation nor the specific language of Section 30(b) show Congressional intent to preclude application of the Exchange Act to transactions regarding stocks traded in the United States, when extraterritorial application of the Act is necessary to protect American investors."
The court specified only two situations where the 1934 Act would have extraterritorial application: first, where a domestic purchaser buys foreign securities on an American exchange, and second, *802 where an improper foreign transaction in American securities affects the domestic securities market. On the rehearing en banc the full court stated that the panel's decision on subject matter jurisdiction "stands as the holding of this Court" (405 F.2d at 217).
Schoenbaum also makes clear that there must be "a necessary and substantial act within the United States" in connection with the alleged violation before an American court may have jurisdiction over foreign transactions. See, also, Kook v. Crang, 182 F.Supp. 388 (S.D.N.Y.1960).
Certain additional facts are established by uncontroverted affidavits regarding the defendants' contacts within the United States and this district, and the use of the mails and telephones during the period of the tender offer, May 1968 to June 1969.
Plaintiff Travis initiated several telephone calls and sent several letters to Canada inquiring about the tender offer. All but five of the communications took place entirely in Canada.
Anthes had one communication with plaintiffs, a letter dated May 25, 1968, respecting the negotiations toward a merger of Anthes and Molson, specifically stating that no offer was being made to United States resident shareholders, and that the letter was being sent to them for informational purposes only.
One individual defendant, Mr. Willmot, president of Anthes and Molson, had two contacts with plaintiffs during the period in issue: one telephone call to cancel an appointment and to advise that there was nothing Molson could do to avoid imposition of the capital gains tax in an exchange for plaintiffs' Anthes shares; and one letter responding to an inquiry of plaintiff Travis regarding the tender offer.
Eighteen of the individual defendants who are officers and directors of Anthes and Molson and who have been served, had absolutely no contact with plaintiffs, and were never in this district, during the period of time in issue.
Three of the individual defendants who are officers and directors of Anthes and Molson and who have been served, were in this district during the period in issue on matters totally unconnected with the tender offer and the claims presented here.
The only contacts during the period in issue between defendant Dominion and plaintiffs were telephone calls from plaintiff Travis to Mr. Scott in Canada; and a research report mailed from Dominion to Anthes shareholders reporting favorably on the tender offer. By affidavit plaintiff Travis states that he talked with Mr. Scott once or twice a month for the entire period, and that once, Mr. Scott "inferred" that Molson would probably make an attractive offer to Travis. It is uncontroverted that early in the period in issue, plaintiff Travis and Mr. Scott agreed that plaintiff Travis would have to take up with Molson the question of any exchange of stock held by plaintiffs.
Defendant Molson initiated a written communication with the plaintiffs, a circular letter dated May 25, 1969, advising Anthes shareholders of the termination date of the tender offer.
On June 26, 1969, Molson counsel, Mr. Gates, telephoned counsel for plaintiffs, Mr. Cole, from Canada to St. Louis to advise plaintiffs that Molson would do nothing to effect a tax free exchange for plaintiffs, that is, to pay plaintiffs additional compensation for their shares so as to put plaintiffs on an equivalent, net-after-taxes, basis with non-United States resident shareholders.
Plaintiff Travis sent a telegram to Canada from St. Louis offering to sell his shares in Anthes to Molson. Molson sent a return telegram from Canada accepting the offer. The physical exchange of plaintiffs' Anthes shares for cash took place in St. Louis.
Mr. Gates annd Mr. McCammon, representatives of Molson, visited St. Louis for the purpose of exchanging cash for *803 plaintiffs' Anthes shares on terms previously agreed upon.
In considering the contacts by defendants in this district, it is important to keep in mind the exact nature of plaintiffs' claims. It is only contacts and acts in connection with the alleged violation that are significant.
Plaintiffs first complain that the tender offer was not extended to Anthes shareholders residing in the United States. There is no question that the offer was not made in the United States. Thus, all communications and correspondence to United States resident shareholders regarding the tender offer did not and could not be the basis of contact in the United States. The tender offer is not the subject of plaintiffs' complaint, it is the lack of the tender offer in the United States of which plaintiffs complain.
Plaintiffs also charge that defendants misled plaintiffs by misrepresenting to them that Molson would, as requested by plaintiffs, make an offer to plaintiffs which would include compensation over and above that paid to non-United States resident shareholders so as to eliminate the capital gains tax effect. The communications wherein such misrepresentations are claimed to have been made occurred in Canada or were initiated by plaintiffs in St. Louis and directed to persons in Canada.
The defendants' contacts in this district, significantly, are communications and contacts in which the defendants advised the plaintiffs of the true facts or intentions of Molson with respect to the plaintiffs' Anthes shares. True and correct representations made by the defendants are not the basis of this action.
Nor is the ultimate exchange of plaintiffs' shares for cash, which occurred in St. Louis, the basis of the action. At that time, plaintiffs were laboring under no misrepresentation. In addition, the terms of the exchange were not agreed upon in this district. The significance of the ultimate sale is simply the damages claimed by plaintiffs. Plaintiffs seek damages in an amount which is the difference between what they actually received at the time of the exchange of their Anthes shares, and what would have been due them had they not been induced to refrain from selling.
The Court concludes that the defendants' contacts and acts within the United States and this district are not such necessary and substantial acts within the United States in connection with the alleged violation as to give this Court jurisdiction over a foreign transaction. Whatever cause of action plaintiffs may have, it is not cognizable in this Court in this district by giving the Securities Exchange Act of 1934 extraterritorial application under the allegations and facts of the present case.
The Court also finds subject matter jurisdiction lacking for the reason that plaintiffs have failed to state a claim under Rule 10b-5. Rule 10b-5 expressly requires that the acts prohibited therein must be in connection with the purchase or sale of any security. In Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967), the Court of Appeals for this Circuit state at p. 791:
"And, Rule 10b-5 specifically provides protection only in connection with the purchase and sale of the security. Plaintiffs are neither investors or purchasers or sellers of the security in question. It would seem, therefore, that they would not be entitled to bring a private civil action for a violation of the statute. As was stated in the leading case of Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir. 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, `* * * Rule X-10-5 extended protection only to the defrauded purchaser or seller. Since the complaint failed to allege that any of the plaintiffs fell within either class, the judgment of the district court [dismissing the complaint for failure to state a cause of action] was correct * * *.' This was the interpretation placed on this statute and rule by the trial court and *804 we believe this interpretation is correct. As plaintiffs are neither purchasers or sellers of the allegedly fraudulent security and were not the parties defrauded by a purchase or sale, they are not within the class afforded protection under the Act and implementing Rule and consequently have failed to state any cause of action for violation of § 10(b) of the 1934 Act."
The Eighth Circuit has consistently given the "purchaser-seller" requirement strict application. See, Erling v. Powell, 429 F.2d 795 (8th Cir. 1970); and City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir. 1970) cert. den. 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970).
Here the plaintiffs are claiming that they failed to sell their Anthes shares (and were unable to buy Molson shares) as a result of defendants' misrepresentations. Plaintiffs claim that defendants wrongfully induced them to refrain from selling. In Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), the rule laid down in Birnbaum was reaffirmed in a case similar to the present one. In that case the plaintiffs were claiming that they were unable to purchase shares of Syracuse China because of defendants' misrepresentations. The court affirmed the dismissal of the complaint for failure to state a claim, stating (417 F.2d at 965):
"The rule laid down in Birnbaum is that a civil action under Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) may be maintained only by a purchaser or seller of securities. We find no reason to deviate from that rule in the present case. The decision below is therefore affirmed."
In the instant case, plaintiffs were not induced to purchase or sell their Anthes shares as a result of defendants' alleged misrepresentations. A failure to purchase or sell is insufficient to state a claim for relief under Rule 10b-5.
The fact that plaintiffs did sell their Anthes shares ultimately does not compel a different conclusion. As plaintiffs have admitted in their complaint, at the time they sold their shares they were laboring under no misrepresentations, but rather, knew fully the defendants' intentions. List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), and approved and followed in Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1967).
The Court has carefully examined the authorities presented by plaintiffs to the effect that they are "forced sellers" within the meaning of the "purchase or sale" requirement of § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. The Court concludes that plaintiffs' allegations fall short of the requirement for "forced sellers". The Court finds the cases of Crane Company v. Westinghouse Air Brake Company, 419 F.2d 787 (2d Cir. 1969); and Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir. 1967) distinguishable on their facts and inapplicable to the present case.
Likewise, plaintiffs' claim that defendants breached a fiduciary duty owed plaintiffs does not state a claim for relief under § 10(b) of the Act. See, Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967); Iroquois Industries, Inc. v. Syracuse China Corp, supra; Erling v. Powell, 429 F.2d 795 (8th Cir. 1970).
Accordingly, the Court finds that this Court lacks jurisdiction as to Count One, a finding which removes the basis of the pendent jurisdiction asserted in Count Two. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
This Court is without jurisdiction for the further reason that venue is improper. Title 28 U.S.C. § 1406(a) provides:
"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of *805 justice, transfer such case to any district or division in which it could have been brought."
As indicated by the previous discussion, this Court lacks jurisdiction under the Securities Exchange Act and therefore, the venue provisions of that Act are not applicable. However, even under the Act, this Court is not the proper venue.
Venue is proper under § 27 of the Securities Exchange Act only in any one of four possible locations, to wit: in a district where (1) the defendant is an inhabitant, (2) the defendant is found, (3) the defendant transacts business or, (4) any act or transaction constituting the violation occurred.
In the present case, no individual defendant is an inhabitant of this district. All individual defendants reside in Canada except two who reside in other states. All of the corporate defendants are Canadian corporations. No defendant has been found or served in this district with the exception of Mr. J. D. Molson.
As to transacting business, in Gilson v. Pittsburgh Forgings Co., 284 F.Supp. 569, at 570 (S.D.N.Y.1968), the court stated the test:
"A defendant `transacts business' in a district within the meaning of Section 27 only when, among other things, its activities within the district constitute a `substantial part' of its ordinary business."
Applying that test, the court held that the listing of the corporation's shares on the New York Stock Exchange and having a transfer agent and registrar in New York were not sufficient to constitute "transacting business" within that district.
The venue provisions of the antitrust laws are analogous to those of the securities laws and decisions under the former are helpful in interpreting the securities laws venue provisions, United Industrial Corp. v. Nuclear Corp., 237 F.Supp. 971, 978 (D.Del.1964). Thus, in United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), the Supreme Court stated that the test of venue is "[T]he practical, everyday business or commercial concept of doing or carrying on business `of any substantial character'" (333 U.S. at 807, 68 S.Ct. at 862).
The supporting affidavits reveal that the activities of defendants Molson and Anthes in this district do not constitute a "substantial part" of their ordinary business which is done primarily in Canada and in states other than Missouri.
Almost all of the individual defendants, as concerns the business of Molson and Anthes, have never been in or communicated with this district. Those who have, have done so on such an irregular and sporadic basis that such contacts do not constitute a substantial part of their business activities.
The question remains as to whether an act or transaction constituting the violation occurred within this district. The alleged violation consists principally of a series of acts by defendants in Canada, in which defendants induced plaintiffs not to sell Anthes shares. As has been previously set out, the statements and negotiations with respect to the sale of plaintiffs' shares were conducted primarily at plaintiff's initiative. Thereafter plaintiff Travis sent a telegram to defendant Molson in Canada offering to sell his shares, and a telegram was sent from Canada to plaintiff Travis accepting the offer. The physical transfer of plaintiffs' shares to defendant Molson for cash occurred in this district. However, that act of transfer is not the act complained of by plaintiffs. Plaintiffs were not deceived at that time by any representations made by defendants. The alleged violation is not the purchase of plaintiffs' shares by Molson, but is Molson's alleged failure to make its tender offer to plaintiffs and Molson's alleged misrepresentation that it would make an equivalent, net-after-taxes, offer to plaintiffs.
Thus, under the venue provisions of the Security Exchange Act this Court is not the proper venue.
*806 Nor is this Court the proper venue for the assertion of any claims resting upon diversity. The general venue provisions regarding United States courts, 28 U.S.C. § 1391, provides:
"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.
(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.
(c) An alien may be sued in any district."
On its face, the first subdivision is inapplicable. The jurisdiction of none of the counts of the complaint is "founded only on diversity of citizenship". As Professor Moore has stated, 1 Moore Federal Practice 1476-7 (2d ed. 1964):
"The word `only' is construed literally and strictly to limit this subsection to actions founded solely, entirely and wholly upon diversity. If there is any additional basis for federal jurisdiction other than diversity this subsection is inapplicable."
The present action is founded upon question of federal law and pendent jurisdiction.
Under subdivision (b) of the general venue provisions, venue is only proper in two judicial districts, where all defendants reside and, as provided by a 1966 amendment, where the claim arose.
None of the defendants reside in this district. This Court is of the opinion that the claim did not arise in this district.
In one of the few cases interpreting this relatively new venue provision a similar contention was rejected, Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968). There, in a carefully reasoned opinion, the Court stated: "It is submitted that `where the claim arose' should be dependent upon where the contacts weigh most heavily" (Id. at 260). Applying that test, venue was improper in the forum court.
Under such a test, venue is not proper in this district as the supporting affidavits establish that the weight of the contacts is overwhelmingly in Canada. The contacts with this district are that plaintiffs reside here and the physical exchange of plaintiffs' Anthes shares for cash took place here. But for the reasons already stated, no claim is asserted respecting that physical exchange. In other cases interpreting this recently adopted venue provision, the forum courts held that they were not the proper venue despite that plaintiffs were physically located or resided in the forum, Control Data Corp. v. Carolina Power & Light Co., 274 F.Supp. 336 (S.D.N.Y.1967); Sutton v. City of Philadelphia, 286 F.Supp. 143 (S.D.N.Y. 1968).
Finally, despite the broad language of subdivision (d) of § 1391 to the effect that an alien can be sued in any district, the courts have held that language to mean that an alien can only be sued in a district in which he can validly be served with process. 1 Moore, Federal Practice, 1329 (2d ed. 1964); Vaughn v. Empresas Hondurenas, S. A., 171 F.2d 46 (5th Cir. 1948); Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219 (D.N.J.1966); Maryland, for Use of Mitchell v. Capital Airlines, Inc., 199 F.Supp. 335 (S.D.N.Y.1961). None of the individual defendants, except Mr. J. D. Molson, could be served with process in this district.
*807 In summary, whether venue is based upon the special venue provisions of the Federal Securities Exchange Act or the general venue provisions, venue of all the claims asserted is improperly laid in this Court.
Under the terms of 28 U.S.C. § 1406, upon finding venue to be improper, this Court will dismiss the action.
Accordingly, defendants' motions to dismiss for lack of jurisdiction will be granted. All other motions pending before this Court are thereby made moot.