**HONDA ASSOCIATES, INC., Plaintiff,**

v.

**NOZAWA TRADING, INC., Defendant.**

No. 72 Civ. 4623.

United States District Court,
S. D. New York.

April 16, 1974.

Jessel Rothman, New York City, for plaintiff.

Bert A. Collison, Nims, Halliday, Whitman, Howes, Collison & Isner, New York City, Andrew J. Belansky, Christie, Parker & Hale, Pasadena, Cal., of counsel, for defendant.

## OPINION AND ORDER

CONNER, District Judge:

This is an action under the Trademark Act of 1946, 15 U.S.C. § 1051 et

seq., for alleged infringement of the registered trademark TOKAIDO as applied to martial arts products, such as karate and judo uniforms. Defendant has moved under Rules 12(b)(2) and (3), F.R.Civ.P., to dismiss the complaint for lack of personal jurisdiction and improper venue.

An evidentiary hearing on the motion was conducted before Magistrate Jacobs of this Court, and his detailed and excellent report thereon, dated March 1, 1974, has been reviewed and its findings of fact have been accepted by the Court. It is the source of the factual recitations herein.

## THE OPERATIVE FACTS

Plaintiff is a New York corporation engaged in the sale of karate and judo uniforms under the trademark TOKAIDO, for which it has obtained Registration No. 845,941 on the Principal Register of the U.S. Patent Office.

Defendant is a California corporation using the same trademark on similar goods which it sells through: (1) a single retail store in Los Angeles; (2) six jobbers, all located in California, and 200 retail outlets, of which all but 4 or 5 are located in California and the remainder on the West Coast; and (3) mail order sales, of which 90 percent of the volume is done in California, with another 5 percent in the West, and the remainder distributed generally throughout the rest of the United States. The mail order sales are promoted by a catalog, of which about 1,000 copies are mailed out annually. During the last 5 years, a total of about 20 catalogs has been sent to potential customers in the State of New York in response to mail requests, principally generated by advertisements in the nationally circulated magazine, "Judo Illustrated". The catalog, but not the magazine advertisements, use the accused trademark TOKAIDO.

During the four-year period 1970–1973, defendant received from New York State only 3 mail orders for the allegedly infringing goods, with a total retail value of $37., which represents only about 1/100 of 1 percent of its total martial arts sales and 1/300 of 1 percent of its sales of all goods during the period.

In New York State, defendant has never had an office or other property, or a bank account, post office box, mail drop or telephone listing. It has no sales representative here. None of its officers or employees has ever visited New York for business purposes.

## PERSONAL JURISDICTION

Plaintiff served defendant under the New York "long arm" statutes, correctly relying on the principle that the federal courts must determine questions of personal jurisdiction in accordance with the laws of the state in which they sit, not only in cases in which federal jurisdiction is founded on diversity, but also where, as here, it is based on the existence of a federal question. United States v. First National City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); Car Freshner Corp. v. Broadway Mfg. Co., 337 F.Supp. 618, 619 (S.D.N.Y.1971).

Plaintiff has cited four possibly applicable sections of the New York law, C.P.L.R. §§ 301, 302(a)1, 302(a)2 and 302(a)3. It is correct as to one of the four, which is enough. Section 302(a)2 gives the New York courts jurisdiction over any non-domiciliary who commits "a tortious act within the state."

As the Court ruled in Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F. 2d 633, 639 (2d Cir. 1956), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76, reh. denied, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956):

> " . . . in cases of trade-mark infringement . . . the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs . . . . "

See Marvel Products, Inc. v. Fantastics, Inc., 296 F.Supp. 783, 787 (D.Conn.

1968). *Cf.* Welch Scientific Co. v. Human Engineering Institute, Inc., 416 F. 2d 32, 34 (7th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); Engineered Sports Products v. Brunswick Corp., 362 F.Supp. 722 (D.Utah 1973); Marston v. L. E. Gant, 351 F.Supp. 1122, 1124 (E.D.Va. 1972); Albert Levine Assoc. v. Bertoni & Cotti, 314 F.Supp. 169 (S.D.N.Y. 1970); Albert Levine Assoc. v. Bertoni & Cotti, 309 F.Supp. 456 (S.D.N.Y. 1970).

Moreover, it has been ruled that the distribution of catalogs offering goods under an infringing trademark, even without actual sales, constitutes a tortious act. R.F.D. Group Limited v. Rubber Fabricators, Inc., 323 F.Supp. 521, 526 (S.D.N.Y.1971); Tunlaw Corp. v. E. F. MacDonald Co., 162 U.S.P.Q. 194 (N. D.Ill.1969); Olin Mathieson Chemical Corp. v. Molins Organizations, Ltd., 261 F.Supp. 436, 441 (E.D.Va.1966). See Car-Freshner Corp. v. Broadway Manufacturing Co., 337 F.Supp. 618 (S.D.N. Y.1971); Waltham Watch Co. v. Hallmark Jewelers, Inc., 336 F.Supp. 1010 (N.D.Ill.1971); Swift & Company v. Farmers Produce Co., 167 U.S.P.Q. 448 (N.D.Ill.1970).

Thus it appears that defendant's mail order operations in New York fall within the "plain and precise" meaning of C.P.L.R. § 302(a)2, which requires no specified level of activity within the State, but only that the plaintiff suffer some damage as a result of a tortious act committed by defendant or its agent in New York. Feathers v. McLucas, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 209 N. E.2d 68 (1965); Karsh v. Karsh, 62 Misc.2d 783, 310 N.Y.S.2d 578 (Sup.Ct., Bx.Cty.1970); 1 Weinstein-Korn-Miller, New York Civil Practice, ¶ 302.10 at 3–93 (1973). Therefore, it is clear that the court has personal jurisdiction over the defendant.

## VENUE

 Plaintiff's argument in support of venue is understandably brief (two pages), because plaintiffs begins with the assumption that "This Court must necessarily conclude that venue is proper since the tests for determination of both issues [venue and personal jurisdiction] are virtually the same."

Plaintiff's assumption that venue more or less automatically follows personal jurisdiction perhaps explains why the complaint is devoid of any allegation of the basis for venue. However, in the short section on venue in its memorandum in opposition to the motion, plaintiff cites the general venue statute applicable to corporate defendants, 28 U.S. C. § 1391(c), which permits suit in any district in which the defendant is "incorporated or licensed to do business or is doing business."

It has been conceded that defendant is a California corporation which is not licensed to do business in New York. However, plaintiff argues that defendant is "doing business" in New York because the same "minimum contacts" test by which the constitutionality of the State "long-arm" statutes has been determined, International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is also the measure of "doing business" under Section 1391(c).

I do not agree. The underlying rationale of the venue statutes is entirely different from that of the "long arm" statutes. The venue statutes, of course, are designed to protect defendants from the inconvenience of defending actions in areas remote from their residences or, in the case of corporations, where they have significant activities. The "long arm" statutes, on the other hand, are designed to protect *plaintiffs* by allowing them to bring local suits against foreign defendants who have sought the protection of the local laws and must accept concomitant responsibility under them. The state laws affecting personal jurisdiction thus have no effect upon the interpretation of the federal venue statutes, Murphree v. Mississippi Publishing Corp., 149 F.2d 138 (5th Cir. 1945), aff'd, 326 U.S. 438, 66 S.Ct. 242, 90 L.

Ed. 185 (1946); C. Wright, Federal Courts § 42, at 152 n.23 (2d ed. 1970, Supp.1972). Although in Carter-Wallace, Inc. v. Ever-Dry Corp., 290 F.Supp. 735 (S.D.N.Y.1968), this Court stated that once it had determined that it had personal jurisdiction, "we necessarily have determined that venue is proper," it was only because in that case, personal jurisdiction was based on N.Y.C.P.L.R. § 301, which permits service on non-resident defendants who are "doing business" in New York—a requirement identical with the test of venue under Section 1391(c). Here we have not found personal jurisdiction on the basis of C.P.L.R. § 301, so that venue does not follow *ipso facto*.

Carter-Wallace, Inc. v. Ever-Dry Corp., *supra*, is the only case cited by plaintiff in support of its argument that defendant is "doing business" in this district. But the facts there were quite different from those in the case at bar. There the defendant had two sales representatives who regularly called on 80 customers within the Southern District, including many of the largest department stores, distributing samples, making collections, negotiating returns and investigating possible corporate acquisitions. It had conducted three annual sales meetings here; its advertising agency was located here; and it had advertised extensively here, not only through national magazines but through local newspapers and "spot" radio commercials.

■ I am aware of no case in which a nonresident corporation has been ruled to be "doing business" in a district with which its only contacts have been through the mail. Indeed, in a number of cases corporations have been ruled not to be "doing business" in a state in which their "presence" was far more palpable than that of the present defendant in New York. For example, in Metropolitan Staple Corp. v. Samuel Moore & Co., 278 F.Supp. 85 (S.D.N.Y.1967), this Court ruled that a corporation was not "doing business" in New York despite the presence of a full-time sales-

man here, and a listing in defendant's name in the Manhattan Telephone Directory.

I therefore conclude that defendant is not "doing business" in this district within the contemplation of Section 1391(c).

■ Although plaintiff, in its brief discussion of venue, did not rely on 28 U.S.C. § 1391(b) (curiously, it was cited in plaintiff's discussion of personal jurisdiction), that section must also be considered, since the limitations of subsection (c) cannot be read into the other subsections of Section 1391, even where a corporate defendant is involved. See Campbell v. Triangle Corp., 336 F.Supp. 1002, 1007 (E.D.Pa.1972); Strick Corp. v. Cravens Homalloy (Sheffield) Ltd., 352 F.Supp. 844, 848 (E.D.Pa. 1972); A.P. Green Refractories Co. v. Peerless Boiler & Engineering Co., 303 F.Supp. 275, 276 (E.D.Mo.1969).

■ Prior to 1966, Section 1391(b) provided that a civil action not founded solely on diversity "may be brought only in the judicial district where all defendants reside, except as otherwise provided by law." However, in 1966, it was amended by adding, before the last clause, the words "or in which the claim arose."

Plaintiff contends that in this action the claim arose in this district because defendant, by magazine advertisements and catalogs, offered its goods bearing the infringing trademark for sale here, and received and filled mail orders from customers here.

The issue thus turns on whether the words "the claim" in subsection (b) mean the *largest part* of the claim, a *substantial part* thereof, or *any part* thereof.

Unfortunately, the legislative history of the 1966 amendment affords little guidance, containing nothing more informative than a statement to the effect that its purpose was to provide a place of suit more convenient to all parties than was permissible previously. However, the Supreme Court has explained

that the object of the amendment was to close a "gap" in the venue laws, which had given plaintiffs *no* proper venue for actions against multiple defendants residing in different districts. Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 710, n. 8, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972).

There is no more in the judicial treatment of the amendment than there was in its legislative history to suggest that it was intended to broaden the choice of venue with respect to "transitory" causes of action, like the present, which arise from a multitude of similar acts performed substantially throughout the country. If plaintiff's argument about the meaning of the amendment is correct, a trademark infringer could be sued in *any* district into which it had shipped to a customer or prospective customer, goods or sales literature bearing the infringing mark. If the amendment had really been intended to effect such a drastic expansion of venue in transitory actions, it seems unlikely that Congress would have enacted it without appropriate comment and that the courts would have been equally silent about it in the seven years that have followed.

The 1966 amendment has been construed in only a limited number of cases, none of which is particularly instructive here. Although two of these cases were actions for trademark infringement, they involved factual situations which are not analogous to that in the case at bar.

In R.F.D. Group Limited v. Rubber Fabricators, Inc., *supra,* all of the accused acts (the use of plaintiff's photograph and logo) occurred in New York, as did all of the "passing off."

In Car Freshner Corp. v. Broadway Mfg. Co., *supra,* the defendant had a sales representative in New York and defendant's accused products were sold in many retail outlets throughout a wide area of the State.

In Carter-Wallace, Inc. v. Ever-Dry Corp., *supra,* an action for declaratory judgment with respect to alleged trade-mark infringement and unfair competition, Judge Mansfield expressly declined to determine the applicability of the addition to Section 1391(b), 290 F.Supp. at 739.

Of the other cases involving the 1966 amendment, only the antitrust and securities cases are sufficiently similar in nature to merit mention here. The most frequently cited decision is Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F. Supp. 252 (E.D.Pa.1968). That was an antitrust action involving an alleged conspiracy to fix prices. The plaintiff urged that under Section 1391(b), as amended, the action could be brought in any district wherein the defendant had sold plumbing fixtures at a price which had been elevated as a result of the alleged conspiracy. The Court rejected that contention, ruling that in determining where "the claim arose," the weight of defendant's contacts in the various districts concerned must be compared, and the claim must be deemed to have arisen in the district where the contacts had been most significant. In that case, the Court ruled that the proper venue was the district where the alleged conspiracy occurred and that suit could not be brought in other districts even though sales had been made there.

Other antitrust cases following this "weight of contacts" test are: Redmond v. Atlantic Coast Football League, 359 F.Supp. 666 (S.D.Ind.1973); Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F.Supp. 812 (E.D.Pa.1972); California Clippers, Inc. v. United States Soccer Football Assn., 314 F.Supp. 1057 (N.D.Calif.1970); ABC Great States, Inc. v. Globe Ticket Co., 310 F.Supp. 739 (N.D.Ill.1970). *But cf.* Albert Levine Assoc. v. Bertoni & Cotti, 314 F.Supp. 169 (S.D.N.Y.1970).

Travis v. Anthes Imperial Ltd., 473 F.2d 515 (8th Cir. 1973), was an action charging securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. The plaintiff, a resident of Missouri, sued the Canadian corporation

**892**

whose stock he had purchased. The District Court, applying the "weight of contacts" test, found that the most significant activity had occurred in Canada and dismisssed the action. 331 F.Supp. 797 (E.D.Mo.1971). The Court of Appeals reversed, stating that since the defendant's only significant contacts within the United States were those in the district of plaintiff's residence, to deny plaintiff the right to sue there would be to deprive him of any protection of the United States securities laws.

By contrast, in the present case, a ruling of improper venue will not deprive plaintiff of any substantive rights, but merely force it into another district where a much greater volume of the allegedly infringing business has been conducted.

It is obvious that the overwhelming "weight of contacts" is in California. That is not to say that in trademark cases the "weight of contacts" rule should be applied so literally as to exclude suit in any district other than the one where the greatest volume of infringing activity occurred, but only that the claim should not be deemed to have arisen in a district in which the defendant has had only miniscule contact, and that entirely by mail.

In other words, to return to the question as originally posed, I am deciding that the right given by Section 1391(b) to sue in any district "in which the claim arose" is not the right to sue where *any* part of the claim, however small, arose. I need not decide which of the other two possible meansings (the *largest* part of the claim or a *substantial* part thereof) is the correct one, since neither would apply here.

However, instead of dismissing the action for want of proper venue, "in the interest of justice," as provided in 28 U.S.C. § 1406(a), it is hereby transferred to the United States District Court for the Central District of California, clearly a venue "in which it could have been brought."

So ordered.