**PREMIER HERBS, INC., Plaintiff,**

v.

**NATURE'S WAY PRODUCTS, INC., Defendant.**

**No. 87 CIV. 6576 (SWK).**

United States District Court, S.D. New York.

May 9, 1988.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff has brought suit against defendant claiming violations of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), for use of false descriptions and representations, of 15 U.S.C. § 1114, for trademark infringement and unfair competition, of § 368–d of the New York General Business Law, for wrongful dilution of plaintiff's trademark. Jurisdiction is premised on § 39 of the Trademark Act, 15 U.S.C. § 1121, and upon 28 U.S.C. §§ 1331, 1332 and 1338.

The action is presently before the Court on defendant's motion to dismiss the action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Rule") on the grounds that venue is improper under 28 U.S.C. § 1391, or in the alternative, to transfer the action to the Central District of Utah pursuant to 28 U.S.C. § 1406. Defendant also moves, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a). Plaintiff's complaint asserts that venue is proper under § 1391(b) and (c).

### Background

Plaintiff is a corporation organized under the laws of Delaware. At the time the action was commenced, plaintiff's principal place of business was in Santa Monica, California. In its affidavit in opposition to this motion, plaintiff states that its principal place of business has moved to Boca Raton, Florida. Defendant is an Arizona corporation with its principal place of business in Springville, Utah. Defendant is engaged in the business of developing, processing and marketing herbs and dietary supplements for sale to the public.

Plaintiff claims that defendant sells a product known as "SUMA", under that name, in violation of plaintiff's trademark. Plaintiff alleges that beginning in 1986 it manufactured, distributed and sold an herbal product, which has the botanical name of *Pfaffia paniculata,* under the name and trademark SUMA. At or about that time, plaintiff alleges it met with defendant to discuss confidentially a marketing plan for plaintiff's product and furnished defendant a sample of plaintiff's product bearing the name SUMA. Plaintiff claims that defendant then obtained plant material for processing and distribution in the New York area, and commenced in May, 1987, to advertise and sell a product called *Pfaffia paniculata* under the name SUMA.

Defendant claims that all of its records relating to research and development, processing, manufacturing, sales and marketing are located at its Utah headquarters. The plant which manufactures the allegedly infringing product and the labels for the product are also allegedly located in Utah. All of defendant's employees are allegedly located in Utah as are most of the witnesses defendant plans on using at trial. Defendant states that it has no offices, bank accounts or telephone listings in New York, and that it owns no real or personal property in New York. In addition, defendant contends that it has no agent for service of process in New York, holds no director or shareholders meetings in New York and has no employees within New York. Defendant notes that it is not licensed to do business in New York and leases no real or personal property in the state.

Defendant states that it sells its products through independent brokers, who are paid strictly on a commission basis related to the amount of their sales, and who pay all of their own expenses. These brokers, according to defendant, also sell other product lines and have no power to bind defendant. Defendant states that the broker who handles sales in this district is located in Oakhurst, New Jersey. Plaintiff claims that it has discovered the presence of two companies in New York which actually distribute defendant's products.[1] Defendant acknowledges the use of distributors, but states that they too work on a commission basis, receive orders through the broker and have no power to bind defendant.

Plaintiff does not dispute these facts, except as indicated above, and instead claims, upon information and belief, that defendant is one of the country's largest health food manufacturers, and that defendant's products, including the allegedly infringing Suma product, can be found in virtually every health food store in New York City. Plaintiff asserts that defendant advertises heavily in nutritional magazines and that its products command a prominent display in at least two health food stores in New York City. Based on these assertions, plaintiff concludes that New York City is "undoubtedly" one of the most significant health food markets in the country and that defendant derives a significant percentage of its business from the sale of its product in the New York City market.[2]

## Discussion

Defendant argues that this action should be dismissed or transferred because venue, as defined in 28 U.S.C. § 1391, does not lie within the Southern District of New York. Since this action is not based solely on diversity, a civil action "may be brought only in the judicial district where all defendants reside, or in which the claim

---

1. Plaintiff argues that the presence of these distributors contradicts defendant's assertion that its broker for the New York area is located in New Jersey. Plaintiff's assertion does not establish that defendant actually has any relation with these distributors; it is just as likely that the distributors work through the auspices of the New Jersey broker.

2. Defendant criticizes plaintiff for failing to provide a memorandum of law as required by Rule 3(b) of the Civil Rules of the Southern District, which states that failure to provide a memorandum of law is a basis for granting the motion by default. The filing of an affidavit which mixes assertions of fact and arguments of law is both confusing and possibly detrimental to plaintiff's cause. While the Court agrees with defendant's criticism, under the circumstances of this case the Court will not grant defendant's motion by default, as defendant has urged, and considers the merits below.

arose, except as otherwise provided by law." In addition, since defendant is a corporation, venue will be found "in any judicial district in which it is incorporated or licensed to do business or is doing business,...." 28 U.S.C. § 1391(c). Defendant argues that venue is improper because it does not "do business" in the Southern District and because the claim did not "arise" in this district.

### The Propriety of Venue in this District

#### *"Doing Business" in New York*

■ As this Court recently stated, a "non-resident corporate defendant is 'doing business', for purposes of venue, when its contracts with this district are sufficient to satisfy the jurisdictional requirements of New York CPLR § 301, which are the same as those for venue under 28 U.S.C. § 1391(c)." *Baldwin Hardware Corp. v. Harden Industries, Inc.,* 663 F.Supp. 82 (S.D.N.Y.1987) (citations omitted). Under § 301, a non-resident is subject to personal jurisdiction in New York if its "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [its] 'presence' in this district." *Id.* (citing *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983)). The relevant factors to consider are the existence of an office in New York, the solicitation of business within the state, the presence of bank accounts and other property in the state and the presence of employees within the state. *Id.* (citing *Hoffritz for Cutlery, Inc. v. Amajac, Inc., Ltd.,* 763 F.2d 55, 58 (2d Cir.1985)).

As defendant correctly argues, the only possible basis for "doing business" venue stems from the indirect solicitation of business by independent agents and contractors. Defendant does not deny that its products are advertised and sold in the New York area, but argues that the mere presence of its product is insufficient to constitute "doing business" within the state. In *McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 517 (2d Cir. 1976), the Second Circuit affirmed that "sales, no matter how substantial, of a foreign manufacturer's product in New York through an independent agency do not make the foreigner amenable to suit in New York [for 'doing business' purposes], even though the products are advertised in local media." (citing *Delagi v. Volkswagenwerk AG,* 29 N.Y.2d 426, 328 N.Y.S. 2d 653, 278 N.E.2d 895 (1972)).

Moreover, the "independent acts in New York for their own purposes by residents in a contract relationship with a non-resident person or corporation in another State may not be attributed to the non-resident so as to become the acts of the non-resident in New York." *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons,* 495 F.Supp. 253, 256 (S.D.N.Y.1980) (citing *DelBello v. Japanese Steak House, Inc.,* 43 A.D.2d 455, 462, 352 N.Y.S.2d 537, 540 (4th Dept. 1974)). The *Loria* court determined that the defendant was not "doing business" in New York by virtue of its arrangements with independent contractors which sold its products since the contractors worked on commission, paid their own expenses, could not finalize orders and were not subject to defendant's direct control. *Id.* at 257. That court also noted that the placement of orders in New York, which were always subject to final approval in Georgia, did not establish jurisdiction. *Id.* The facts of this case are so close to those in *Loria* that it is abundantly clear that defendant is not "doing business" for venue purposes in this district. *See also Baldwin, supra,* 663 F.Supp. at 85 (defendant with no office, employees, bank account or property in New York and whose only contact is through mailing of limited number of catalogs into New York and contact with an independent sales representative with no authority to bind defendant was not "doing business" in New York and venue was improper).

#### *Where the Claim Arose*

Defendant next argues that the claim did not "arise" in New York even though the allegedly infringing product is sold in this district. Plaintiff argues that in trademark infringement cases the claim arises in any district in which the alleged infringer conducts "more than a minuscule" amount of business. Defendant argues that this test is no longer appropriate and urges an

analysis which looks at the defendant's convenience.

A claim for trademark infringement or unfair competition is said to arise "not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *see also Manufacturers Hanover Corp. v. Maine Savings Bank*, No. 81 Civ. 2046, slip op. at p. 1 (S.D.N.Y. January 10, 1985) (available on WESTLAW, 1985 WL 181); *Tefal, S.A. v. Products International Co.*, 529 F.2d 495, 496 n. 1 (3d Cir.1976). Since the passing off often occurs in more than one place, the courts have adopted a "weight of the contacts" test to determine where a trademark claim arose. *Honda Associates v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 891–92 (S.D.N.Y.1974).

In *Honda Associates*, the Court determined that a claim did not arise if defendant had only minuscule contacts with the forum district, and avoided the question of whether contacts needed to be "large" or "substantial". *Id.* at 892 (contact with forum exclusively through limited mailing of catalogs). Other courts have read *Honda Associates* to mean that a trademark claim arises in a district for venue purposes only "where a substantial part of the claim arose." *Transamerica Corp. v. Transfer Planning, Inc.*, 419 F.Supp. 1261, 1263 (S.D.N.Y.1976).

In applying this analysis, courts tend to look at the extent of defendant's overall presence in the state. Some courts have found that the presence need only be "more than minuscule" to be sufficient. For example, a claim was found to arise where defendant had sold $7,000 worth of allegedly infringing posters in New York out of nationwide poster sales of $700,000. *Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279, 287 (S.D.N.Y.1977), though that court noted the presence in New York of a sales representative and the presence of the allegedly infringing products in retail outlets throughout the state. This Court applied the "more than minuscule" test in *Polo Fashions, Inc. v. Get Off Your High Horse, Inc.*, No. 83 Civ. 7437 (SWK), slip op. (S.D.N.Y. October 4, 1984) (available on WESTLAW, 1984 WL 957) and decided that plaintiff's trademark infringement claim arose in New York for venue purposes since defendant had itself sold approximately $4,000 worth of the allegedly infringing goods in New York, representing 0.52% of defendant's gross sales. *See also Tefal, S.A., supra*, 529 F.2d at 496–97 (claim arose in district in which defendant had sold at least 5% of its gross sales where sales agent was also present in the district).

Other courts have either not settled on what percentage satisfies the test or have required that contacts be "substantial". *See Better Sleep, Inc. v. LaLoren, Inc.*, No. 81 Civ. 8133 (CBM), slip op. (S.D.N.Y. March 1, 1985) (available on WESTLAW, 1985 WL 362) (claim did not arise since only 3% of its sales occurred in the district); *Southern Marine Research v. Jetronic Industries*, 590 F.Supp. 1192, 1195 (D.Conn. 1984) (claim did not arise in Connecticut since only 2.39% of defendant's products sold in the district); *Georgia Boot Division v. Georgia Footwear Corp.*, 579 F.Supp. 1037, 1038 (S.D.N.Y.1984) (claim did not arise in New York since only 13% of defendant's products shipped into the district); *Seabrook Foods v. Seabrook Bros. & Sons*, 495 F.Supp. 792, 793 (S.D.N.Y. 1980) (sales of less than one-sixth in district insufficient).

Moreover, the validity of the "more than minuscule"—"substantial contacts" test has been called into question by *Leroy v. Great Western United Corporation*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), in which the Supreme Court determined that

> the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or con-

ceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (emphasis in original). This Court also noted that the "where the claim arose" language in § 1391(b) was designed to restrict venue to " 'a place which may be more convenient to the litigants'—i.e., both of them—'or to the witnesses who are to testify in the case.' " *Leroy, supra,* 443 U.S. at 185, 99 S.Ct. at 2717 (citing S.Rep. No. 1752, 89th Cong., 2d Sess. 3 (1966)). Finally, the analysis should be guided by the fact that "the purposes of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial", *id.* at 183–84, 99 S.Ct. at 2716.

■ This Court believes that *Leroy* is not necessarily to be applied in all trademark infringement cases. *But cf. Manufacturers Hanover Corp., supra,* slip op. at p. 5 n. 2 (*Leroy* is now controlling law in trademark infringement cases); *German Educational Television v. Oregon Public Broadcasting,* 569 F.Supp. 1529, 1533–34 (S.D.N.Y.1983) (*Honda Associates* analysis no longer proper in light of the *Leroy* decision). Instead, the Court must first determine whether the case is an "unusual" one in which it is not apparent that the claim arose in any one particular district. *Manufacturers Hanover Corp., supra,* slip op. at p. 3. The *Leroy* analysis will generally apply when an alleged infringer sells the product nationwide. *Better Sleep, supra,* slip op. at p. 3 (*Leroy* rule applies since allegedly infringing product sold nationwide); *Manufacturers Hanover, supra,* slip op. at p. 4 ("multi-state trademark infringement cases fall within the definition of an 'unusual case' as the term was used in *Leroy* "). The converse of this rule suggests that the *Leroy* analy-

sis should not apply if it is clear that a substantial percentage of the infringing products were sold in only one district. *See Penta Hotels Ltd. v. Penta Tours Reisen GmBh,* No. 85 Civ. 4181 (JFK), slip op. at p. 2 (S.D.N.Y. February 6, 1986) (available on WESTLAW, 1986 WL 1797) (*Leroy* test applied only on assumption that it was not clear the claim arose in one specific district); *Litelab Corp v. LTS Management,* No. 83 Civ. 1235E, slip op. (E.D.N.Y. July 22, 1984) (available on WESTLAW, 1984 WL 1456) (defendants failed to demonstrate sales activity in districts other than forum and court denied motion to transfer pursuant to 28 U.S.C. § 1406(a)).

■ In the present case, plaintiff surmises that defendant sells a substantial portion of its product in this district, and concludes that at least $4000 worth of goods are sold here. The figure $4000 is not of itself significant, however, and the Court has no evidence suggesting the percentage of sales of the product which occur in this district. Plaintiff has provided copies of advertisements appearing in New York and claims that defendant's product is prominently displayed in health food stores throughout the district. The Court is cognizant of defendant's significant presence in Utah, but that fact does not establish that the claim arose there nor does it rebut plaintiff's assertion that the majority of infringing sales occur in New York. Defendant has not contradicted plaintiff's assertion that a substantial portion of its SUMA sales occur in New York, *see Litelab Corp., supra,* nor has it asserted in an affidavit that the product is sold nationwide, *see Better Sleep, supra,* slip op. at p. 3 (evidence showed significant sales in other districts); *Seabrook Foods, supra,* 495 F.Supp. at 793 (evidence showed significant sales in other districts). Absent such refutation, this Court will assume plaintiff's assertions to be true.[3] Since defendant's sales in this district, according to plaintiff's

3. The Court notes that plaintiff's contention is based upon information and belief, but the percentage of an adversary's sales of a particular product in a particular locale cannot otherwise be alleged prior to discovery. Having made an

assertion on information and belief, defendant, which presumably has access to the information in question, could easily have made a counter-assertion of a more reliable nature, but did not do so.

allegation, comprise a substantial percentage of its sales of the infringing product, and since there is no showing that the product is sold anywhere else, the Court concludes that this is not the "unusual case" which calls for the *Leroy* analysis. Applying the *Honda Associates* "more than minuscule"—"substantial contacts" test, the Court finds therefore that that the claim arose in this district. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

Transfer pursuant to 28 U.S.C. § 1404(a)

■ The Court must next determine whether transfer pursuant to 28 U.S.C. § 1404(a) would be appropriate under the circumstances. That subsection states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision to transfer lies within the Court's discretion.

The moving party, here the defendants, has the burden of proving that "the balance of convenience weighs strongly in favor of the transferee court ..." (citations omitted). *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 759 (S.D.N.Y.1980); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The relevant factors of inquiry include:

> the convenience to the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interests of justice.

*Vassallo, supra*, 495 F.Supp. at 759 (citation omitted).

The Court first notes that the action could have been brought in Utah since defendant resides there. Defendants have amply established that continuing this action in New York would create great inconvenience and hardship to defendant and its witnesses. Defendants have identified a large number of witnesses who may testify, all of whom are located in Utah. *See Factors Etc, Inc., supra*, 579 F.2d at 218 (identification of witnesses). Defendant has stated that all documentary evidence concerning its defense sits in Utah, that all its employees are in Utah, that most, if not all, the witnesses it plans to call reside in Utah and that defending the action in New York would cause the company extreme hardship. The presence of all of defendant's employees and documents in Utah also suggests that the sources of proof will be more accessible in Utah. Defendant points out that plaintiff has not asserted either that prosecuting the action in Utah would create an undue hardship or that any of its witnesses are in New York.

Plaintiff, a Delaware corporation with its principal place of business in Florida, has not established any connection with New York, and their choice of forum is accordingly afforded less weight. *See Pesin v. Goldman, Sachs & Co.*, 397 F.Supp. 392, 394 (S.D.N.Y.1975). While transfer pursuant to § 1404(a) may not be warranted "where the result would merely shift the inconvenience and expense from one party to the other", *International Housewares Corp. v. Trans Duck International, Inc.*, 655 F.Supp. 57, 59 (S.D.N.Y.1986) (citation omitted), plaintiff has not shown that litigation in Utah will be any less convenient to itself or its witnesses than litigation in New York would be. For these reasons, transfer would be appropriate.

### Conclusion

For the reasons stated above, venue is proper in this district. The action is transferred to the Central District of Utah, for the convenience of the parties and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.