537 F.2d 1078
 COMMERCIAL LIGHTING PRODUCTS, INC., a Delaware Corporation, Petitioner,
v.
UNITED STATES DISTRICT COURT, Respondent,
and
INDUSTRIAL LIGHTING PRODUCTS COMPANY, a Michigan
Corporation, et al., Respondents and Real Parties
in Interest.
 No. 75--3755.
 United States Court of Appeals,
Ninth Circuit.
 June 30, 1976.
 
 Richard D. DeLuce (argued), of Lawler, Felix & Hall, Los Angeles, Cal., for appellant.
 Hugh A. Lipton (argued), of Lipton & Margolin, Hollywood, Cal., for appellees.
 OPINION
 Before CHAMBERS, HUFSTEDLER, and GOODWIN, Circuit Judges.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Commercial Lighting Products, Inc. ('Commercial') petitions for a writ of mandamus to set aside an order of the district court transferring to Michigan its action against Industrial Lighting Products Company ('Industrial'), Abrams, Potash and Goodman. The issue is whether 28 U.S.C. § 1404(a) prohibits the district court from transferring a case, over the plaintiff's objection, to another district in which the case could not have been brought initially. In Hoffman v. Blaski (1960) 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, the Supreme Court held that a transfer under section 1404(a) was only proper if the transferee district was one in which the plaintiff could have filed suit originally. Because we conclude that Commercial could not have initiated this action in Michigan, we issue the writ and vacate the transfer order.
 
 
 2
 Mandamus will lie to review a clearly erroneous transfer order entered under section 1404(a). (Pacific Car and Foundry Co. v. Pence (9th Cir. 1968) 403 F.2d 949.)
 
 
 3
 Commercial is a Delaware corporation doing business in California. Industrial is a Michigan Corporation doing business in California. Abrams, Potash, and Goodman are citizens resident in California. In this diversity action, Commercial averred that the defendants conspired to breach employment contracts with Commercial in California, to solicit similar breaches of contract, and to divert California customers to Industrial. All of the alleged wrongful acts were done within California, other than a personal visit by Potash to Nevada, the making of some telephone calls to Oregon, Colorado, Arizona and Michigan, the diversion of some sales orders to Michigan, and a visit to Michigan by Abrams.
 
 
 4
 On December 12, 1975, the district court in Los Angeles granted Commercial's motion for a preliminary injunction. However, at the same hearing the court granted defendants' motion for a transfer of the action to Michigan under 28 U.S.C. § 1404. The court stated in its order that there was a prior action between Commercial and Industrial pending in the district court for the Eastern District of Michigan, which action also involved similar business torts; that Commercial was doing business in Michigan, that the defendants resident in California had consented to transfer, thus allowing it to take place, and that these individual defendants may well have been subject to Michigan jurisdiction by virtue of their having allegedly diverted sales orders to Michigan.
 
 
 5
 The defendants' consent to the transfer is irrelevant. As the Court said in Hoffman, supra, '(T)he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff.' (363 U.S. at 343--44, 80 S.Ct. at 1089--1090.)[1]
 
 
 6
 The action 'might have been brought' in Michigan against the individual defendants, who are nonresidents of Michigan, only if Commercial's 'claim arose' in Michigan, within the meaning of 28 U.S.C. § 1391(a), the general venue statute. Interpretation of that slippery phrase depends on federal law, and not on the state law of Michigan. (1 Moore's Federal Practice (2d ed. 1975) P0.142, pp. 1429, 1432.) We assume, arguendo, that these defendants could have been subjected to service of process in Michigan under Michigan's long-arm statutes by reason of the acts that each did personally or acting through his alleged coconspirators in Michigan. Nevertheless, we decline to read the federal venue statute to be precisely coextensive with the constitutional reach of Michigan's long-arm statutes. (Threlkeld v. Tucker (9th Cir. 1974) 496 F.2d 1101.) We prefer a 'significant contacts' approach, which makes more sense, particularly as applied to an action like this one in which at least some of the alleged wrongful acts occurred in more than one state and in more than one federal district. We thus find venue in this type of case in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief.[2] We are aware that our construction of section 1391(a) encounters some technical difficulties with the peculiar wording of the statute, but we agree with Professor Moore that the oddities of draftsmanship evidence in section 1391(a) do not foreclose the substantial contacts test. (1 Moore, op, cit, supra P0.142(5.--2), pp. 1431--1432.) Our construction conforms to the spirit of venue statutes. As we pointed out in Pacific Car and Foundry Co. v. Pence, supra, 403 F.2d at 954, with respect to an analogous venue provision:
 
 
 7
 '. . . The legislative idea was that when a plaintiff has had business transactions with the defendant through which the defendant has injured him, the plaintiff should not be forced to follow the defendant into the defendant's home district. United States v. Scophony Corp., (333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091) supra. The purpose of the Act is to allow the plaintiff, who has been hurt in his dealings with the defendant, to bring suit where the 'defendant had committed violations of the Act and inflicted the forbidden injuries.' United States v. National City Lines, 334 U.S. 573, 583, 68 S.Ct. 1169, 1175, 92 L.Ed. 1584 (1948).'
 
 
 8
 A fortiori, a plaintiff should not be forced to litigate in a forum that he did not choose, in which none of the individual defendant parties reside and in which contacts were minimal.
 
 
 9
 All of the significant contacts in this case occurred outside of Michigan. Almost all of the alleged acts that caused injury were done in California, and the injury was sustained here. The California forum is in fact convenient for all of the parties, as evidenced by the proceedings that led the district court to grant a preliminary injunction to Commercial.
 
 
 10
 The transfer order is vacated. Let the writ issue.
 
 
 
 [1]
 Defendants' reliance on Van Dusen v. Barrack (1964) 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 and A. J. Industries v. United States District Court (9th Cir. 1974) 503 F.2d 384, is misplaced. Van Dusen merely stands for the proposition that an otherwise proper forum is not rendered improper, for transfer of venue purposes, because an out-of-state administrator was not qualified under state law to act as an administrator in the transferee court, especially where he could so qualify. A.J. Industries involved two corporations which were engaged in litigation in Delaware prior to the commencement of similar litigation in California. This court held that the right of the plaintiff corporation in the California action to raise the subject matter of that lawsuit by way of counterclaim in the Delaware action satisfied the statute and permitted transfer to Delaware. No plausible argument has been made to explain how this action could have been made a counterclaim in any action pending in Michigan
 
 
 [2]
 This language is a paraphrase of the American Law Institute's draft of a new venue provision for the Judicial Code. ALI Study, §§ 1303(a)(1) and 1314(a) (1)