Harry L. PFEIFFER, Plaintiff,

v.

INTERNATIONAL ACADEMY OF
BIOMAGNETIC MEDICINE, et
al., Defendant.

Civ. A. No. 80–1061–CV–W–2.

United States District Court,
W. D. Missouri, W. D.

Sept. 15, 1981.

---

John C. McMahon, Malcolm A. Litman, Fishburn, Gold & Litman, Kansas City, Mo., for plaintiff Harry L. Pfeiffer.

Richard W. Jones, Hurt, Haverstock & Jones, Murray, Ky., and Robert Gingrich, Jr., Kodas, Reed, Gingrich & McFadden, P.C., Kansas City, Mo., for defendants Richard Broeringmeyer, Mary Broeringmeyer, American Biomagnetic Association, and International Academy of Biomagnetic Medicine.

R. Lawrence Ward, Steven D. Ruse, Shughart, Thomson & Kilroy, A Professional Corp., Kansas City, Mo., for defendant Robert S. Yowell.

ORDER TRANSFERRING ACTION TO UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY AND DENYING CERTAIN MOTIONS WITHOUT PREJUDICE

COLLINSON, Senior District Judge.

Plaintiff Harry L. Pfeiffer, a chiropractic physician and citizen of the State of Missouri with his principal place of business in Missouri, brings this multiple-count action against defendants International Academy of Biomagnetic Medicine ("Academy"), an unincorporated association in Kentucky; American Biomagnetic Association ("Association"), an unincorporated association in Kentucky; Richard Broeringmeyer and Mary Broeringmeyer, chiropractic physicians and citizens of the State of Kentucky with their principal place of business in Kentucky; and Robert S. Yowell, a chiropractic physician and citizen of the State of Virginia with his principal place of business in Virginia.

Plaintiff teaches seminars which include teachings in the science referred to as biomagnetics wherein plaintiff instructs various practitioners of the healing arts to use magnets to functionally balance patients suffering from an internal dysfunction. Plaintiff commonly teaches such seminars as an independent contractor, contracting with Sivad Bioresearch Company ("Sivad"), of Madison Heights, Michigan, and the various distributors thereof. Defendants also conduct such seminars and are in direct competition with plaintiff. Both plaintiff and defendants have taught such seminars in several states including Missouri.

Plaintiff's amended complaint, filed March 6, 1981, alleges that defendant Association wrote to Sivad, accusing plaintiff of

plagiarism and threatening to sue Sivad and plaintiff for copyright infringement. In the fall of 1979, and on January 7, 1980, the owner of the allegedly infringed copyright, Biomagnetics International, Inc., through its president Mr. Walter Rawls, wrote to Sivad and to plaintiff accusing plaintiff of infringing its copyright. In January of 1980, however, Mr. Rawls again wrote plaintiff, after response by plaintiff to Rawls' original letter, stating that Rawls was mistaken and that plaintiff did not infringe Biomagnetics International, Inc.'s copyright. A copy of the letter was sent to defendant Richard Broeringmeyer at the same time the original was sent to plaintiff.

Plaintiff's amended complaint further alleges that about September 1980 each defendant singly or in combination caused to be written a magazine entitled BIOENERGETICS. BIOENERGETICS was sent to a substantial number of chiropractic physicians in the United States, including numerous such chiropractic physicians who enrolled to attend one or more seminars offered by plaintiff through contractual agreements with Sivad. The magazine, at page 13, publishes a copy of the January 7, 1980, letter from Mr. Rawls to plaintiff which accuses plaintiff of copyright infringement. Plaintiff's amended complaint alleges that defendants were fully aware that the charges made in the letter of January 7, 1980, had been rescinded by Mr. Rawls, especially in light of Rawls subsequent letter. On the page immediately preceding the reproduction of Rawls January 7, 1980, letter accusing plaintiff of copyright infringement, defendants allegedly caused a warning notice to be printed which was allegedly intended to relate to the letter and insinuate that plaintiff was guilty of copyright infringement. The warning notice stated:

### WARNING NOTICE!

We have found doctors teaching our work who have not been authorized to do so. They have distorted the facts. If you take their class, ask them for research data and proof of results.

The nutrition company sponsoring these doctors causes us to question its integrity. WE ASK YOUR COOPERATION— BETTER STILL PROTECT YOURSELF AND YOUR PATIENTS, DO NOT PATRONIZE THEM.

Plaintiff alleges that defendants Richard and Mary Broeringmeyer and defendant Yowell are editors of BIOENERGETICS and defendant Academy was publisher of the magazine. Plaintiff alleges that because of the foregoing acts, defendants have tortiously interfered with plaintiff's contractual relations (Count I); engaged in unfair competition (Count II); violated 15 U.S.C. § 45(a) of the Federal Trade Commission Act (Count III); engaged in a conspiracy and attempt to monopolize in violation of 15 U.S.C. §§ 1 and 2, respectively (Count IV); violated certain antitrust laws of the State of Missouri, Mo.Ann.Stat. § 416.031 (Count V); engaged in the misuse of a patent (Counts VI and VII); and libeled plaintiff (Count VIII).

The present matter pends upon defendants' various motions to dismiss, generally based on the assertions that this Court lacks *in personam* jurisdiction because defendants have not committed a "tortious act within the state" as required by Missouri's long-arm statute, Mo.Ann.Stat. § 506.500; that venue under 28 U.S.C. § 1391(b) in the Western District of Missouri is improper because it is not the district in which "the claim arose"; and that certain counts of the amended complaint fail to state a cause of action. After review of defendants' motions, it is the Court's opinion that this Court has *in personam* jurisdiction over defendants because they are amenable to process under Missouri's long-arm statute, but that venue does not lie in the Western District of Missouri under 28 U.S.C. § 1391(b). The case therefore will be transferred under 28 U.S.C. § 1406(a) to the proper district, which in this Court's opinion is the Western District of Kentucky, and defendants' remaining motions will be denied at this time pending their renewal after transfer.

*In Personam Jurisdiction And The Missouri Long-Arm Statute, Mo.Ann.Stat. § 506.500*

Defendants contend this Court lacks *in personam* jurisdiction and that service of process was invalid because they have not committed a "tortious act within the state" as required by Mo.Ann.Stat. § 506.500. Rule 4(e) of the Federal Rules of Civil Procedure provides:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons or of a notice, . . . upon a party not an inhabitant of or found within the state, . . . service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

The Missouri statute providing for service of process "upon a party not an inhabitant of or found within the state" is Mo.Ann. Stat. § 506.500 [1] and in the present action all parties agree that the applicability of Missouri's long-arm statute depends on whether the non-resident defendants have committed a "tortious act within the state" within the meaning of the statute.

Before a non-resident defendant may be subject to service of process from the forum state, the service of process must meet due process requirements.

[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not afford "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

The Missouri Legislature, in enacting the long-arm statute in 1967, intended to enlarge the reach of service of process providing *in personam* jurisdiction to the broadest extent permissible under the Due Process Clause as interpreted by *International Shoe. Wooldridge v. Beech Aircraft Corp.*, 479 F.Supp. 1041 (W.D.Mo.1979); *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889 (Mo. en banc 1970). In other words the Missouri Legislature intended to broaden the scope of the Missouri long-arm statute to the extent that non-resident defendants need have only the most minimal contacts with the state to be subject to service of process and *in personam* jurisdiction.

While the *International Shoe* minimum contacts test remains intact, the type of contacts which will satisfy the test have been restricted by the recent Supreme Court case of *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World-Wide Volkswagen*, the Court using the minimum contacts test of *International Shoe*, held that petitioners, a New York retail automobile dealer and its regional distributor whose region was limited to the three-state area of New York, New Jersey, and Connecticut, did not have sufficient minimum contacts to subject them to *in personam* jurisdiction in Oklahoma when plaintiffs were driving through Oklahoma in an automobile purchased from petitioners and were injured because of an alleged defect in the automobile. The Court reiterated "the Due Process Clause forbids the assertion of jurisdiction over a defendant 'with which the state has no contacts, ties, or relations,'" *id.*, at 313, 100 S.Ct. at 568, *quoting, International Shoe Co. v. Washington, supra*, 326 U.S. at 319, 66 S.Ct. at 159, and that the applicable test was whether plaintiff had "alleged a sufficient 'relationship among the defendant[s], the forum, and the litigation,' *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977), to satisfy

---

1. Missouri's long-arm statute, Mo.Ann.Stat. § 506.500 states in part:

   *Actions in which out-of-state service is authorized*:
   1. Any person or firm, whether or not a citizen or resident of this state . . . who . . . does any of the acts enumerated in this sec-

tion thereby submits such person, firm or corporation, . . . to the jurisdiction of the courts in this state as to any cause of action arising from the doing of any of such acts:

   .      .      .      .      .

   (3) The commission of a tortious act within the state.

the requirements of *International Shoe.*" *World-Wide Volkswagen v. Woodson, supra*, 444 U.S. at 313, 100 S.Ct. at 568 (Marshall, J. dissenting).

Although holding that the petitioners did not have sufficient minimum contacts to satisfy due process, the Court limited its holding to the particular facts of the case and stated:

> The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.

*Id.*, at 297–98, 100 S.Ct. at 567–68.

▮ In the present case, defendants have come into Missouri and conducted seminars within the state on numerous occasions in direct competition with plaintiff.[2] Paraphrasing the Supreme Court, it is this Court's opinion that Missouri does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a defendant that delivers its services into the stream of commerce with the expectation that they will be purchased by consumers in Missouri.

▮ Because the Missouri Legislature intended to enact a long-arm statute which would subject to suit all nonresident defendants whose contacts with Missouri were sufficient to satisfy due process, and because this Court holds that the non-resident defendants' contacts with Missouri were sufficient to satisfy due process under *International Shoe* and *World-Wide Volkswagen*, see p. 1335, *supra*, it logically follows that this Court has *in personam* jurisdiction over defendants.

It should be pointed out, however, that in the present action the parties contend that the applicability of Missouri's long-arm statute depends exclusively upon whether defendants can be deemed to have committed a "tortious act within the state" as

required by Mo.Ann.Stat. § 506.500. While the Court, as indicated by the foregoing discussion, does not agree that the applicability of Missouri's long-arm statute depends solely upon the more limited question of whether defendants committed a "tortious act within the state," it chooses nonetheless to briefly address the question.

The "tortious act" phrase has been interpreted by both Missouri courts and federal courts. In two early products liability actions it was held that where the act of negligence was committed in the state where the product was manufactured, but damage did not result until after the product had been transferred to the state where the injury occurred, the latter state's long-arm statute was applicable. *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. en banc 1970); *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965) (interpreting Minnesota's similar long-arm statute). Later these principles were extended to non-products liability actions by holding that Missouri case law construes the phrase "commission of a tortious act within the state" to include extra-territorial acts producing actionable consequences in Missouri. *See, Fulton v. Chicago, Rock Island & Pacific R.R. Co.*, 481 F.2d 326 (8th Cir. 1973), *citing Missouri, ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. en banc 1970); *Missouri, ex rel. Apco Oil Co. v. Turpin*, 490 S.W.2d 400 (Mo.App.1973). *See also, School District of Kansas City v. State of Missouri*, 460 F.Supp. 421 (W.D.Mo.1978). Other jurisdictions have interpreted similar long-arm statutes to include extra-territorial acts producing actionable consequences in the state and upheld the validity of such a construction against constitutional due process attacks. *See Buckley v. New York Post Corporation*, 373 F.2d 175 (2d Cir. 1967); *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Ehlers v. United States Heating & Cooling Manufacturing Corp.*, 267 Minn. 56, 124 N.W.2d 824 (1963).

---

**2.** In answers to plaintiff's interrogatories, all the individual defendants state that they have been in Missouri to lecture on the use of biomagnetics. Defendants Richard and Mary Broeringmeyer state that they have been in Missouri

more than 20 times since September 7, 1973, primarily to conduct seminars on the subject of biomagnetics. Defendant Yowell also states that he has been in Missouri to lecture on the use of biomagnetics.

██ It is this Court's opinion that, if, as the parties state, the sole question is whether defendants have "committed a tortious act within the state" as required by Mo.Ann.Stat. § 506.500, that question must be answered in the affirmative in the light of the authorities holding the Missouri long-arm statute was intended to extend to the broadest confines constitutionally permissible under the Due Process Clause; construing the "commission of a tortious act within the state" to include extra-territorial acts producing actionable consequences in Missouri and; upholding such a construction against due process attacks.

This Court, having already determined that Missouri's long-arm statute applies to defendants in the case at bar, declines to decide whether cases construing the "commission of a tortious act within the state" to include "extra-territorial acts producing actionable consequences within the state" could withstand due process attacks since *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, it is this Court's opinion that a non-resident defendant "commits a tortious act within the state" and subjects itself to suit in the state in accordance with the due process requirements of *International Shoe* and *World-Wide Volkswagen*, when, through wholly extra-territorial acts it sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business. Therefore, even under the fictitious assumption that defendants' overt acts were committed wholly outside the state, defendants are still deemed to have committed a tortious act within the state because they allegedly set in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business. Accordingly, Missouri's long-arm statute applies and this Court has *in personam* jurisdiction over defendants.

### Venue Under 28 U.S.C. § 1391(b)

Defendants next allege that venue does not properly lie in the Western District of Missouri under 28 U.S.C. § 1391 which states in part (emphasis added):

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, *or in which the claim arose*, except as otherwise provided by law.

The parties agree that 28 U.S.C. § 1391(b) applies because Counts III and IV of plaintiff's amended complaint are based on the Federal Antitrust Laws and plaintiff's action therefore is not based *solely* on diversity of citizenship. Furthermore, all defendants do *not* reside in the same judicial district, so in order for venue to properly lie in the Western District of Missouri under Section 1391(b) it must be the district in which "the claim arose." Defendants contend that the Western District of Missouri is not the district in which the claim arose. Because of the confusion surrounding the determination of where a claim arose for purposes of the federal venue statutes, this Court chooses to discuss, in some detail, the various applicable standards.

██ "The determination of where 'the claim arose' for purposes of federal venue under Section 1391 is a federal question whose answer depends upon federal law." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2717 n.15, 61 L.Ed.2d 464 (1979). While there is some conflict, the better view is that once defendant has raised the defense of improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, and the Court is therefore reviewing the allegations in plaintiff's complaint alone, as here, the plaintiff bears the burden of proving proper venue. *See*, Wood, *Federal Venue: Locating the Place Where the Claim Arose*, 54 Tex.L. Rev. 392, 411 n. 112 (1976) (hereinafter cited as 54 Tex.L.Rev. 392), *citing* 5 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 1352 (1969). If venue is proper, but a *more* convenient forum

exists, the court may transfer the action to the more convenient forum. 28 U.S.C. § 1404(a). If venue is improper, the court may dismiss the action or, if it be in the interest of justice, transfer the action to the proper district. 28 U.S.C. § 1406(a).

### The Legislative History of 28 U.S.C. § 1391(b)

Prior to 1963, venue in the federal courts was based entirely on the residence of the parties. In 1963, Congress enacted an amendment permitting venue in automobile tort cases in the district where the act or omission occurred. Act of December 23, 1963, Pub.L.No. 88–234, 77 Stat. 473 (codified at 28 U.S.C. § 1391(f)). However, even with the 1963 amendment, Section 1391 left so-called "venue gaps" in non-automobile multi-party diversity actions. Unless all the plaintiffs or all of the defendants resided in a single district, the action simply could not be entertained in federal court, despite having fulfilled jurisdictional and service of process requirements. *See*, 54 Tex.L.Rev. 392, 397, *citing* C. Wright, *Handbook of the Law of Federal Courts*, § 42, at 151 (2d ed. 1970).

In 1966, Congress again attempted to cure deficiencies in the venue system and close the so-called "venue gaps" by adding to Subsections (a) and (b) of Section 1391 that venue would also be proper in the district "in which the claim arose" and repealing the special automobile sub-section. *See*, Act of November 2, 1966, Pub.L.No. 89–714, § 2, 80 Stat. 111, repealing Act of December 23, 1963, Pub.L.No. 88–234, 77 Stat. 473. The meager legislative history of the amendment sheds no light on why Congress chose this particular wording under numerous possible alternatives.[3] But it is obvious that Congress intended to close the "venue gaps" to provide that at least one district would always exist in which venue would lie. *See, Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710, and n. 8, 92 S.Ct. 1936, 1939 and n. 8, 32 L.Ed.2d 428 (1971), *cited in Leroy v. Great Western*

*United Corp.*, 443 U.S. 173, 184, n. 17, 99 S.Ct. 2710, 2717 n. 17, 61 L.Ed.2d 464 (1979). Unfortunately, there is no reliable touchstone to the meaning of "where the claim arose" as this term is used in the 1966 amendments. 1 *Moore's Federal Practice* ¶ 0.142[5.–2], at 1429 (2d ed. 1980). Because of the ambiguities in the phrase added by the 1966 amendments various tests have evolved to determine "where the claim arose."

### The Weight of Contacts Test

One of the most widely used tests inquires where the "contacts weigh most heavily." Under this approach, first used in a private antitrust case,

> it is submitted that "where the claim arose" should be dependent upon where the contacts weigh *most* heavily. A "weight of contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was significant and substantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district, . . . venue would not lie there. Similarly, if a meaningless or insignificant meeting of the conspirators took place in a certain district, venue would not exist there either.

*Philadelphia Housing Authority v. American Radiator and Standards Sanitary Corporation*, 291 F.Supp. 252, 260–61 (E.D.Pa. 1968) (emphasis added).

While the weight of contacts test is widely used, it is not without its critics. Professors Wright and Miller state that "neither the cases announcing this test, . . . nor those that have applied it have shed light on how contacts are weighed or when they are significant, nor on what contacts should

---

3. Nor does the legislative history of the federal venue statutes shed light on why Congress chose to be more generous in providing venue in diversity cases than in federal question cases—a discrepancy which has survived several revisions and persists in the law today. See, 54 Tex.L.Rev. 392, 396–98.

be weighed in cases in fields other than antitrust." 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3806, at 36 (1976). Furthermore, under the weight of the contacts test, it is difficult to determine whether venue may properly lie in more than one district because of the court's use of the word "most," which implies that venue would only be proper in one place.

The courts which have attempted to follow the weight of the contacts test reflect its ambiguities. For example, in *Travis v. Anthes Imperial Ltd.*, 331 F.Supp. 797 (E.D. Mo.1971), *rev'd*, 473 F.2d 515 (8th Cir. 1973), the district court relied on the word "most" in concluding that venue was not proper in its district, since the weight of contacts lay overwhelmingly in another district. The Court of Appeals for the Eighth Circuit, however, reversed, "apparently accepting the view that if contacts were ponderous enough, venue is proper, even though they have considerable weight in other districts or jurisdictions as well." 54 Tex.L.Rev. 392, 405 (1976), *citing Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 529 (8th Cir. 1973).

A district court within the Eighth Circuit has liberally applied the weight of contacts test. *Arnold v. Smith Motor Co.*, 389 F.Supp. 1020 (N.D.Iowa 1974). In *Arnold*, the court reviewed the policies behind modern venue law and developments in venue law since the 1966 amendments in concluding the court's only task was to refuse venue where the contacts were "miniscule."

Venue has been considered as the place where jurisdiction may be exercised, and while it affords some protection to defendants, it is designed to facilitate the maximum convenience for *all* litigants.... The 1966 amendment to section 1391 evidenced a concern for a forum convenient to the aggrieved party as well as the defendant.... Modern means of transportation and the availability of a motion for transfer under 28 U.S.C. § 1404 in the case of an extreme inconvenience, have obviated the need for a strict venue rule based on a theory of geographic hardship to defendant.

*Arnold v. Smith Motor Co., supra*, at 1024 (citations omitted).[4]

The *Arnold* case's liberal construction of the federal venue statute and emphasis upon the plaintiff's choice of forum absent "extreme inconvenience" appears contrary to Supreme Court directives. *Olberding v. Illinois Central R. Co.*, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953) termed venue as "specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy is to be given a 'liberal' construction." *Id.*, at 340, 74 S.Ct. at 85. More recently the Court stated that "[s]o long as the plain language of the statute does not open the severe type of 'venue-gap' that the amendment giving plaintiff the right to proceed in the district where the claim arose was designed to close, *there is no reason to read it more broadly on behalf of plaintiffs.*" *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979) (emphasis added).

### The American Law Institute Test

Somewhat similar to the weight of contacts text, the American Law Institute's proposal provides for venue in *any* district

---

4. The Arnold test has been praised for its result and criticized for its use of precedent. In reference to the Arnold case, it has been stated "[w]hen the 1966 amendment receives this kind of enlightened construction, the law has achieved as much as can be hoped for. To the extent that the weight of contacts test permits this flexibility, it provides a welcome gloss on the statute." 54 Tex.L.Rev. 392, 406–407. However, the *Arnold* court apparently miscited *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886 (S.D.N.Y.1964) for the proposition that the court's only task was for the court to refuse venue where the contacts were miniscule. In Honda Associates, however, the overwhelming weight of contacts was in California and in transferring the case from New York to California, the district court judge for the Southern District of New York stated that it was unnecessary to decide whether the largest part of a claim arose in his district or merely a substantial part, for it was clear that "the claim should not be deemed to have arisen in a district in which the defendant has had only miniscule contact...." *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 892 (S.D.N.Y.1964) *cited in* 54 Tex.L.Rev. 392, 406 N. 86.

in which "a substantial part of the events or omissions giving rise to the claim occurred." ALI Study of the Division of Jurisdiction Between the State and Federal Courts, §§ 1303, 1314 (1969) (hereinafter referred to as ALI Study). Basically, it appears that the drafters of the ALI Study simply sought to enact the weight of contacts text with a couple of improvements. First, the drafters took care to insure that venue could be proper in more than one district by emphasizing the word "any" instead of "most." *Id.* at 137, cited in 54 Tex.L.Rev. 392, 414, n. 128. Secondly, the burden placed upon plaintiff to show proper venue would be eased because controversy would arise over what constituted "a substantial part" of the events or omissions only when plaintiff was taking a "deliberate chance." *Id.*

It appears that the liberalization of the weight of contacts test contained in the ALI proposal has made it attractive. The ease of proving proper venue has led several jurisdictions to adopt the ALI test or a test more akin to the ALI test than the weight of contacts test. *See, Lamont v. Haig,* 590 F.2d 1124 (D.C.Cir.1978); *Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078 (9th Cir. 1976); 1 *Moore's Federal Practice* ¶ 0.142[5.–2], at 1433, n. 75 (2d ed. 1980). Indeed the Eighth Circuit Court of Appeals has both noted and applied the ALI test along with other tests. *See, Cochrane v. Iowa Beef Processors,* 596 F.2d 254, 261 (8th Cir. 1979) (applying the ALI test in addition to the weight of contacts test and the place of injury test); *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27, 33 (8th Cir. 1973) ("noting," but not necessarily applying the ALI test).

### The Place of Injury Test

The place of injury test presents the major alternative to the contacts-type approaches. The test is most often applied in tort actions, *see, Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232 (E.D.N.Y.1967), but it has also been used in antitrust cases. *See, Iranian Shipping Lines, S. A. v. Moraites,* 377 F.Supp. 644 (S.D.N.Y.1974); *Albert Levine & Associates v. Bertoni & Cotti,* 314 F.Supp. 169 (S.D.N.Y.1970).

In business oriented litigation, problems arise in determining where the place of injury occurred when the aggrieved party is a corporation. For example, this district has applied a variation on the place of injury analysis by relying on the location of an organization's headquarters as the place where the claim arose, without discussing whether injury actually occurred there. *Alameda Oil Co. v. Ideal Basic Industries, Inc.,* 313 F.Supp. 164 (W.D.Mo.1970). In *Alameda Oil,* the court held that it was preferable to litigate the claim in Colorado, where allegedly deceptive proxies and accompanying statements were prepared by defendant, instead of in Missouri, where the proxies were received and shareholders allegedly deceived. The Court apparently felt that the claim arose in both districts because it transferred the action to Colorado under Section 1404(a), basing the transfer on the fact that any injury was to the corporation and the corporation's headquarters was in Colorado.

Generally the place of injury test is reliable and provides for an easily ascertainable district in which the claim arose. Unfortunately, the place of injury approach has been accused of undue rigidity and difficulty seems to lie in the conflicting desires for a reliable test, or for a test so tailored to the facts under consideration that it produces the most convenient forum. *See,* 54 Tex.L.Rev. 392, 408 (1976).

### Equating Amenability to Process With Federal Venue

Some courts seem to equate amenability to process with satisfaction of federal venue requirements. *Colorado-Florida Living, Inc. v. Deltona Corp.,* 338 F.Supp. 880 (D.Colo.1972); *Hawaii Credit Card Corp. v. Continental Credit Card Corp.,* 290 F.Supp. 848 (D.Hawaii 1968). Often courts will discuss whether the defendants are subject to the jurisdiction's long-arm statute and, after concluding that they are, state the same factors show that the claim arose in the district for purposes of the federal venue

statute. *Oce-Industries, Inc. v. Coleman*, 487 F.Supp. 548, 552 (C.D.Ill.1980); *Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 178–182 (D.C.N.Y. 1979); *Battlecreek Equipment Co. v. Roberts Manufacturing Co.*, 460 F.Supp. 18 (D.C.Mich.1978); 15 Wright, Miller & Cooper, *Federal Practice and Procedures: Jurisdiction*, § 3806, at 28, n. 13 (1976).

Equating amenability to process with federal venue requirements has received both praise and criticism. Indeed Professor Moore states that until 1887 amenability to service of process was normally the only prerequisite to proper venue and that a present day adoption of such an approach would permit a plaintiff to sue in the federal court in any state that would treat the claim as arising under its law and provide for service of process on the nonresident defendant. Equation of availability of compulsory process on the non-resident and proper venue under Section 1391 would also have other advantages according to Professor Moore. *See*, 1 *Moore's Federal Practice* ¶ 0.142[5.–2], at 1429–1432 (2d ed. 1980).

The approach of equating amenability to process with federal venue requirements has been used in this district. *Stith v. Manor Baking Co.*, 418 F.Supp. 150 (W.D. Mo.1976). In *Stith* the court stated:

Professor Moore believes that a claim "arises" in any state in which the defendant's contacts are sufficient to subject it to personal jurisdiction in that state. Further, Section 1391(c), Title 28, United States Code, provides that a corporation may be sued in any district in which it is "doing business." This provision has been construed to mean that if a corporation is subject to personal jurisdiction in the district, it is "doing business" there for venue purposes.

Because [defendant] is subject to personal jurisdiction in this district for the reasons stated [above] its motion to dismiss for improper venue will be denied.

*Stith v. Manor Baking Co., supra*, at 155 (citations omitted).

On the other hand, Professors Wright and Miller criticize the use of this approach by stating that the questions of amenability to process and satisfaction of federal venue requirements

are not the same and should not be confused. State law must be looked to in determining the applicability of a state long-arm statute. State law has no application in determining in which district the claim arose for purposes of the federal venue statute. That is wholly determined by federal law, whether the suit be based on a federal question or diversity of citizenship.

15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3806, at 28 (1976).

As indicated by the foregoing, there is great confusion as to what the applicable standards are for determining where the "claim arose" for purposes of the federal venue statutes. Indeed this district and the Eighth Circuit is illustrative of the confusion in that the jurisdictions have not only used each of the aforementioned approaches, but have also used variations upon each approach. *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 529 (8th Cir. 1973) (applying the weight of contacts test); *Arnold v. Smith Motor Co.*, 389 F.Supp. 1020 (N.D.Ia.1974) (liberally applying the weight of contacts test in holding that venue is proper unless the contacts are only "miniscule"); *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973) (noting, but not necessarily applying the ALI test); *Alameda Oil Co. v. Ideal Basic Industries, Inc.*, 313 F.Supp. 164 (W.D.Mo.1970) (applying the place of injury test in holding the place of injury to a corporation is the place of the corporation's headquarters); *Stith v. Manor Baking Co.*, 418 F.Supp. 150 (W.D.Mo.1976) (equating amenability of process with federal venue requirements in 28 U.S.C. § 1391(a) and (b)).

Perhaps most illustrative of the confusion concerning where a claim arises is *Cochrane v. Iowa Beef Processors*, 596 F.2d 254 (8th Cir. 1979). In *Cochrane*, a panel for the Eighth Circuit noted that the federal courts have developed varying standards for determining where the claim arose. According to the panel, the "principal ones are: (1) the

'weight of contacts' rule; (2) the 'place of injury' rule; and (3) the American Law Institute Rule." *Id.*, at 260. Apparently uncertain which rule should apply, the panel, after review of the facts, applied all three rules and concluded without explanation that "under any of the federal procedural standards mentioned above" the claim arose in the Southern District of Iowa. *Id.*, at 261.[5]

Because of the uncertainty surrounding the determination of where the claim arose, as illustrated by *Cochrane v. Iowa Beef Processors, supra*, this Court and other federal courts were indeed hopeful that the confusion would be cleared up by the enunciation of an applicable test when the Supreme Court decided *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

*Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)*

In *Leroy*, plaintiff, a Texas based corporation announced its intent to make a tender offer to purchase shares of stock of a company having substantial assets in Idaho. Plaintiff filed the necessary documents with the Securities Exchange Commission and also filed documents in Idaho in an attempt to satisfy Idaho's take-over statute. Idaho officials objected to the filing and delayed the effective date of the tendered offer. Plaintiff, the Texas corporation, then filed suit in the Northern District of Texas to restrain the Idaho state officials from applying the Idaho take-over statute preventing plaintiff from making a tender offer for the stock of the Idaho corporation. The Idaho defendants appeared specially to contest jurisdiction and venue and later filed an answer contesting the merits of the claim. The District Court for the Northern District of Texas found that venue was improper under the general federal statute, 28 U.S.C. § 1391(b), because the defendants did not reside in Texas and the claim arose in Idaho rather than in Texas. The district court, however, decided that venue could be sustained under the special venue provisions of Section 27 of the Securities Exchange Act of 1934.

On appeal, the Fifth Circuit Court of Appeals held that venue was proper under both Section 27 of the Securities Exchange Act of 1934 and the general federal venue statute, 28 U.S.C. § 1391(b). In reference to Section 1391(b) the Fifth Circuit reasoned that because the allegedly invalid restraint against plaintiff corporation occurred in Texas, it was accordingly "the judicial district . . . in which the claim arose." *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1265–1274 (5th Cir. 1978).

On appeal to the Supreme Court, the Court, without reaching either the merits or the constitutional question arising out of the attempt to assert personal jurisdiction over defendants, reversed the Court of Appeals and held venue did not lie in the Northern District of Texas under either one of the statutes. In reference to 28 U.S.C. § 1391(b), the Court stated:

> The statute allows venue in "the judicial district . . . in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a whole list of different districts. *Denver & R. G. W. R. Co. v. Railroad Trainmen*, 387 U.S. 556, 560 [87 S.Ct. 1746, 1748, 18 L.Ed.2d 954]. Rather, it restricted venue to the residence of the defendants or to "a place which may be more convenient to the litigants"—*i. e.* both of them—"or to the witnesses who are to testify in the case." S.Rep.No.1752, 89th Cong. 2nd Sess. 3 (1966). *See, Denver & R. G. W. R.*

5. To further illustrate the confusion surrounding the determination of where the claim arose for purposes of the federal venue statutes, it should be pointed out that the author of *Cochrane v. Iowa Beef Processors*, 596 F.2d 254 (8th Cir. 1979), a case using the weight of contacts test, the place of injury test and the ALI test, is also the author of *Stith v. Manor Baking Co.*, 418 F.Supp. 150 (W.D.Mo.1976), a case using a test equating amenability of process with federal venue requirements.

*Co., supra*, at 560 [87 S.Ct. at 1748]. *See also, Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710 [92 S.Ct. 1936, 1939, 32 L.Ed.2d 428]. In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a claimant may chose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim. c. f. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 493–494 [93 S.Ct. 1123, 1128–29, 35 L.Ed.2d 443].

*Leroy v. Great Western United Corp., supra*, 443 U.S. at 184–85, 99 S.Ct. at 2717 (footnotes omitted).

The Court in *Leroy* referred to virtually none of the several tests used by lower federal courts construing where "the claim arose." Instead the Court used as its premise that the language was adopted only to fill venue gaps and was not intended for the convenience of plaintiffs. *Cheeseman v. Carey*, 485 F.Supp. 203, 213–214 (S.D.N.Y.1980). Indeed the Court's pronouncement that the claim arising language was intended for the convenience of defendants and should not be read more broadly on behalf of plaintiffs overruled lower federal court cases which had held that "the convenience of the aggrieved party should be first accommodated."[6] *See, Cochrane v. Iowa Beef Processors*, 596 F.2d 254, 261 (8th Cir. 1979) *quoting Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973). *See also, Arnold v. Smith Motor Co.*, 389 F.Supp. 1020 (N.D.Ia. 1974).

A problem with the *Leroy* decision which this Court has not found discussed elsewhere, is its prerequisite to proper venue that the convenience of defendant be met before that of plaintiff. Such a prerequisite virtually eradicates the circumstances under which a defendant may move for transfer under 28 U.S.C. § 1404(a)[7] because plaintiff has chosen an inconvenient forum. Prior to *Leroy* a party seeking transfer under Section 1404(a) had to show, among other things, that the district in which the action was brought had proper venue,[8] but

---

**6.** In addition to the above quoted passage, the Court stated:

So long as the plain language of [28 U.S.C. § 1391(b)] does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs.

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 184, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979).

**7.** Title 28 U.S.C. § 1404(a) states:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A related section, 28 U.S.C. § 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**8.** See *e. g., Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980) in which the court stated:

The purposes of the two principal transfer provisions are significantly different. Section 1404(a) applies in general to those actions brought in a *permissible* but inconvenient forum. A district court may, "[f]or the convenience of parties and witnesses, in the interest of justice," transfer the action to a more convenient forum. In contrast, § 1406(a) applies in general to those actions brought in an impermissible forum. Rather than dismiss the action when the issue is raised, a district court may, in its discretion, transfer the action to a permissible forum.

*Id.*, at 471 (emphasis added).

After construing the purpose and meaning of 28 U.S.C. § 1406(a) the court concluded:

[Section] 1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either improper venue or lack of personal jurisdiction. This construction of § 1406(a) necessarily limits the application of § 1404(a) to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper.

*Id.*, at 474.

was an inconvenient forum. But under *Leroy*, venue is not proper unless the convenience of the defendant is first accommodated. Therefore, a defendant can rarely, if ever, successfully move under Section 1404(a) for transfer because it would have to argue that the transferor district was an inconvenient forum for defendant—an argument which would, by definition under *Leroy*, admit that venue was improper—and a showing of proper venue is a prerequisite to a successful Section 1404(a) motion. Section 1404(a) was enacted to give defendants a remedy when plaintiffs chose to litigate in an inconvenient forum. Such an event cannot occur under *Leroy* because plaintiffs must choose a forum convenient to defendants before venue is proper.

This Court can conceive of hypothetical situations in which there are several districts where venue is proper [9] and plaintiff files suit in a district which is *not* the most convenient forum, but is a forum more convenient for defendant than plaintiff. Under such a set of circumstances, the dictates of *Leroy* would be satisfied because the convenience of defendant would be accommodated before that of plaintiff and defendant could still move for transfer under Section 1404(a) because a *more* convenient forum existed. But it is this Court's opinion that Section 1404(a) was not meant to apply to such narrow situations now dictated by *Leroy*.

Appropriately, the *Leroy* decision has been criticized for "its failure to eradicate the uncertainties that have surrounded evocations of venue in the 'district . . . in which the claim arose.'" Comment, Venue, 31 S.C.L.Rev. 579, 580 (1980). Indeed commentators and other courts have stated that the *Leroy* decision raises as many questions as it answers. Professors Wright and Miller noted that the Court did not define the "unusual case" in which a claim may be said to arise in more than one district and it is

additionally unclear whether the Court will be agreeable to any interpretation of the claim-arising language that does more than fill a venue gap. 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3806 at 7 (1980 Supp.).

This Court is not alone in its frustration and confusion over what standard should be applied for determining where a claim arose under the federal venue statutes since the *Leroy* decision. Other federal courts which have attempted to determine where a claim arose since the *Leroy* decision have expressed their dismay at the lack of an articulate standard by stating that "[t]he difficulties posed by *Leroy* seem certain to make venue issues an even greater problem for lower federal courts than they were before the Supreme Court spoke." *Cheeseman v. Carey*, 485 F.Supp. 203, 213 (S.D.N.Y.1980).

Turning to the case at bar, it becomes incumbent upon this Court to construe the claim arising language of 28 U.S.C. § 1391(b) in the manner dictated by the *Leroy* case. *Leroy* apparently stands for the proposition that the claim-arising language contained in 28 U.S.C. § 1391 was adopted to fill venue gaps and was not intended for the convenience of the plaintiffs. *See, Cheeseman v. Carey, supra* at 214. Thus, it must be shown that the Western District of Missouri may "with approximately equal plausibility . . . be assigned as the locus of the claim." The plausibility of such an assumption must turn on "the availability of witnesses, the accessibility of the relevant evidence, and the convenience of the defendant (but *not* the plaintiff). . . ." *Leroy v. Great Western United Corp., supra*, 443 U.S. at 184–185, 99 S.Ct. at 2717.

In light of the allegations that the magazine BIOENERGETICS was primarily written in the Western District of Kentucky, that the magazine was first published and distributed in the Western District

---

9. Note, however, that whether a claim may arise in more than one judicial district is the source of much debate. *See*, 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3806 at p. 28–29 (1976); 1 Moore's Federal Practice, ¶ 0.142[5.–2] (2d ed. 1980). The Supreme Court has expressly declined to

decide whether the claim arising language of 28 U.S.C. § 1391 "adopts the occasionally fictive assumption that a claim may arise in only one district." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979).

of Kentucky and that four of the five defendants reside in the Western District of Kentucky, it is this Court's opinion that the Western District of Missouri may *not* "with approximately equal plausibility . . . be assigned as the locus of the claim" because "the availability of witnesses, the accessibility of relevant evidence, and the convenience of the defendant[s] (but *not* the plaintiff)" are much greater in the Western District of Kentucky. Accordingly, venue does not properly lie in the Western District of Missouri under 28 U.S.C. § 1391(b).

Having determined that venue does not properly lie in the Western District of Missouri under 28 U.S.C. § 1391(b) because it is not the district in which the claim arose, the Court, pursuant to the powers vested in it by 28 U.S.C. § 1406(a) [10] hereby transfers the above captioned action to the United States District Court for the Western District of Kentucky. All motions pending other than those to dismiss for improper venue or for lack of *in personam* jurisdiction are hereby denied without prejudice to their renewal after transfer.

In accordance with the foregoing discussion, it is

ORDERED that defendants' motions to dismiss for invalid service of process and lack of *in personam* jurisdiction be, and hereby are, denied; and it is further

ORDERED that defendants' motions to dismiss for improper venue be, and hereby are, denied; and it is further

ORDERED pursuant to 28 U.S.C. § 1406(a), that this action be, and hereby is, transferred to the United States District Court for the Western District of Kentucky; and it is further

ORDERED that all other pending motions be, and hereby are, denied without prejudice to their renewal after transfer.

---

**10.** 28 U.S.C. § 1406(a) allowing a district court, in which is filed a case improperly laying venue, to dismiss or transfer the case to another district, is set out and discussed at n. 8 and accompanying text.